for the appellant Mr. Carr. Good morning your honor opposing counsel may it please the court I intend to reserve three minutes of my time for rebuttal with the court. Introduce yourself for the record please. My name is Jason Carr counsel for the appellant Garen Green. Mr. Green's trial is laden interspaced basically riven with numerous instances of evidentiary and constitutional error as well as prosecutorial misconduct. His conviction is constitutionally infirm and it should be I'll begin at the end so to speak with the government's closing argument. The closing argument contains definitive instances of prosecutorial vouching. It begins on page 404 of the excerpts of record for the government using first person singular pronoun I to describe his personal impressions of whether witnesses were truthful or lying and whether or not they were in his personal opinion or not credible but that his witnesses were credible and just as an example he says at the bottom of page 404 talking about Gloria Green one of his key witnesses she got up in this stand and told you the truth. Was there objection made at the time? Your honor there's no objections to any of the vouching it is reviewed for plain error I will concede that at this point but it is patent. But as vouching goes we've seen a lot worse haven't we that we've sustained? Incorrect your honor I would point to the case United States versus Combs a recent ninth circuit opinion that came down this year which has vouching remarkably similar to the vouching that occurs in this case particularly if we look at the vouching that occurs at the beginning of the government's reply argument on page 421 where the government sets up this dynamic of whether these individuals to believe the defense and to equip my client to believe that these individuals the police officers came in here and lied to everybody including the prosecutor and it's a big conspiracy theory he goes in the same dynamic about Gloria Green saying that she had to come to this courtroom lie to this court lied to me being the prosecutor to the other attorney and the agent lied to you all that's remarkably similar to the vouching that occurred United States versus Combs which this court held was indeed prosecutorial vouching reversed that case under a plain error standard of review and I will note that the Combs what establishes I understand you say that if the prosecutor says the defense witnesses were lying that is vouching if he says I believe they were lying yes that is vouching and I understand it's a high standard for the prosecutor to live under prosecutors are under serious constraints when they argue they cannot use colloquialisms that common people can use indeed they can't even use the same language that the defense attorney can use and why is that because they are painted with the incriminator of the government they stand up there as a representative of the full force and of the United States government the jury understands that they give the prosecutorial to give a prosecutor to benefit the doubt a lot of credibility when the prosecution makes personal assurances using that pronoun first person singular pronoun that has been condemned by numerous decisions as improper including Combs it happens here not once but many times I direct the court's attention to 4-4-4-5 the excerpts of record 4-4-4-8 to 4-9 and 4-21 to 4-22 this is a case where even the government's answering brief if we look at page 36 the government's answering brief they admit tell this court this case essentially reduces to whether Mr. or Mrs. Green was lying to the jury credibility of these two witnesses absolutely paramount to this conviction to the government's case and evidence the government vouched for Mrs. Green and denigrated Mr. Green using their personal opinion they vouched for their witness and case law establishes that that is error the only question is whether it should be reversed well how do we evaluate whether or not this error affected his substantial rights well let's talk about some of the other error that occurred in this case because this is just one instance of prosecutorial misconduct or error let's go to the second major instance of misconduct and error and that's Doyle error it's a clear case of Doyle error I point the court to EOR Doyle error meaning that the prosecutor commented on Mr. Green's constitutional right to remain silent if you look at pages 346 and 347 of the excerpt for record the prosecutor asked Mr. Green why he did not tell law enforcement the exculp his exculpatory version of the events why he did not deny ownership of the firearm we had a little problem in finding out when the Miranda warning was administered in this case and whether those comments preceded or or didn't precede the Miranda warning uh your honor and that is definitive we know the answer to that question and the government knew all along when they filed their I would say misleading answering brief if you look at the end of my reply brief I submitted as an addendum the police report in this case I also filed that with a motion to supplement the records that it is indeed the government that put this question into issue in that police report it says we took him into custody we read him as Miranda rights we on addendum one addendum of the reply brief yes addendum pages one and two the substance the relevant substance begins on page two what whereabouts uh first full paragraph talks about after being taken into custody this investigation occurred second full paragraph Gary and Green was Miranda's by myself via department issued card there's a statement he understood he stated they asked if there are any firearms in the house he stated no one would assist officers no further and what is this number okay it's in the reply wreath the addendum it's the police report so so the Miranda warning was given prior to the comment on his silence well that's an interesting issue let's just answer the question was it given prior to the comment on his silence that well your honor it was issued prior to any custodial questions um the only wrinkle what the utter exculpatory statements before he was questioned which is not only would that completely eviscerate the whole doyle to outline of cases but it's it's nonsensical and nobody puts that on us on a defendant the minute you were taken into custody you're supposed to just start spontaneously uttering exculpatory statements without any questioning here that the government's not arguing that the law enforcement violated Miranda by engaging in questioning without giving his Miranda rights and here with this police report details that the officers followed the rule under the their obligations under the law before they asked him questions they read him Miranda they read him Miranda they began you know I'm looking at this um report that you cited to us and I'm having a little hard time putting it in time sequence uh is this all happening on January 30th yes the day of arrest your honor it says you know he was taken into custody on this domestic violence arrest okay but then then there was a search right right and they found the silver tape on the bathroom on top of the toilet with the 22 caliber rounds and then it then it says garen green was mirandized by myself when green was asked if there are any firearms in the house he stated no and would not assist officers further is that are we to assume that that question was asked after the Miranda or perhaps before the Miranda well your honor if it was asked before Miranda it'd be a lawful custodial interrogation that's one of the issues here well I your honor I would the reasonable supposition to raise here is that it was it was asked after Miranda I mean contemporaneously it says we mirandized and then we asked all right is what it says okay we'll accept it that way all right now and your honor the the just the idea that in the government's answering brief that my that there is somehow my client is under some obligation to answer questions that aren't answered that aren't asked it just it makes no sense at all that and there is no nothing in the case law that puts any onus on a defendant to make spontaneous statements of innocence and what's also interesting about the the government the doyler here and if you look at it is pervasive we're talking about one quick casual question if you look at pages 346 and 347 there are a question is asked why didn't you immediately tell the officers that's not my gun and which the garen green basically has to admit on the stand the exercise is right to remain silent which is on 347 where it says I didn't say anything and then it goes on on page 352 we have three separate questions on one page all in violation of doyle this is pervasive doyle error we're talking about a credibility of a witness that's being attacked here through unconstitutional means whom the government admits is a crucial witness in this case if the jury believes garen green they quit well the prosecutor doesn't let the jury believe garen green by impeaching his testimony and credibility through unconstitutional means and this is not a rule that's new in the area of criminal law this is uh doyle error has been around for almost 30 years council i've got to go back to this document um i have a note that this document is not part of the record that's true that is true i filed it with a motion to supplement the record when i filed my five brief it was filed contemporaneously with the motion to supplement the record and the motions panel or whoever looked at the motion said it would be decided by the panel that decides the case but was this in front of the district court no the police report is what this error we supplement the record if the district court didn't have it well the doyle error was not raised either it's a plain error issue which part of the reason why there's this this lack of yeah but you're asking us to take into account a document that you say should be made part of the record but was never part of the record before the district court my argument is that mr green was asked about why he did not make exculpatory statements to the police and the government in their answering brief implies that he was never read miranda rights and that i can't prove that he his miranda rights are right to him and therefore i can't show doyle error when the government has in its possession the document that shows that he was read miranda rights and that he exercised those rights now the government has an obligation a constitutional obligation not to ask questions that violate the doyle rule they have an onus an ethical onus and a legal onus not to do that the government knew full well he was asked miranda questions or they should have known that they read their own documents that he was read the miranda rights and exercised them they come and argue to this court and they're answering brief i can't prove that he was and i'm telling the court that in reality he was this is the police report that proves it and i did ask the supplemental record because it's the governments that put in this this issue into play when they in fact know the true answer now this court will decide whether it's going to take cognizance of that document that is my position as to why cognizance should be taken the questions themselves are highly questionable and a prosecutor should have known that what he was asking was improper and he shouldn't be able to hide behind the fact that there's this dearth of evidence in the record to prove that what they did was unconstitutional when in fact they know that it was that's so we have the vouching we have the doyle error that's not all though we go on to issue number three the 9-11 transcript the government introduces this transcript of garen green's call to the police highly prejudicial information about domestic violence allegations that 9-11 transcript does not meet any hearsay it is pure and simple inadmissible it's not a present sense impression because she's detailing an incident that happened 12 hours or at least a few hours before she called was there an objection on yes that it was hearsay there was an objection that it was inadmissible hearsay that shana came in in fact there was a lot of argument with the court the court originally said it wasn't coming in but then let it in on rebuttal and there's a lot of arguing at the court over whether it was a prior consistent statement and then the court the court held that it didn't believe it was i'm and we're not the district court can precisely articulate what hearsay exception it thought applied now we have some cases that allow this sort of thing in on the theory that it's necessary to give some context to what was going on what's wrong with that well we're we go into my last assignment of error which is that this trial was really a domestic violence trial and i would concede and we've always conceded that the government had a right to put in some why they were called there and then what happened when they arrived there this case is not one or two fields of far from that it's eight or nine if you read this transcript objectively it is a systematic constant attempt from the government to interject every single prejudicial information they can about this domestic violence and i do not exaggerate this is not hyperbole it is in this trans every time this prosecutor had an opportunity he brought out every nauseating deal about this domestic violence this jury heard over and over and over again about these allegations they heard it from the two officers as to why they went to the residents the first officers who testified they heard about it from gloria green as to what happened in nauseating detail they heard about it on cross-examination of our witnesses they did not need this 9-11 transcript it was purely cumulative it did not add anything to the case other than to further prejudice my client and it is not admissible under any articulable hearsay exception which bemis this court's decision in bema says it must be followed within a hearsay exception and often it does it's often a present sense impression or an excited utterance in this case it isn't either in fact the court on page 404 the on page 382 of the exit of a record says specifically after listening to the tape well you can hear that she's not emotional but it's not an excited utterance there's no emotion or that excitement of the event occurring in her voice not excited utterance not present sense impression not a prior consistent statement it's not admissible except in the government's other theory of state of mind i'm not really sure that's not an articulated hearsay exception in the federal rules of evidence if it's a there is an exception for then existing emotional condition but that's not what this transcript talks about at all it's a narration of events and the government in their closing argument relies on that transcript and says look at the transcript that shows that our witness is credible so they're arguing to the jury that it's admissible as i guess a prior consistent statement when the court ordered it wasn't it's filled with highly prejudicial information if you want to read the transcripts it's in the supplemental supplemental excerpt of record last issue is the well not the last issue but the next issue is the Crawford issue we have Gloria uh Gabriel Green an 11 year old a daughter of my client who was available for testimony who we know in the record uh because the government says well she's that we just don't want to call her because they're reluctant to do it and why they're reluctant to do it because we don't know she was so she wasn't a case where she's not available she was available to testify what they say was the point that in Crawford that was testimony given at a preliminary hearing i believe they characterize it as testimonial do you think a police report qualifies as testimonial your honor in Crawford they give a definition of what they consider a testimonial statement to be or what Scalia considers a testimonial statement we're not going to define it precisely but it includes and in Crawford they say it includes statements given to police in response to investigation voluntary statements would fall within Crawford's definition of a testimonial statement well given to police in answer to questions but for all we know the child was just sat down given the form and told to complete it um is that questioning by the police it certainly isn't any leading questions the kind that might want to be obviated by the Crawford rule is it well that the Crawford the definition of testimonial as explained in Crawford appears to encompass any voluntary statements made to police in conjunction with an investigation in the language if i remember it's exactly an enumerated example of what a testimonial statement would be so our position would be we're on firm ground stating that this testimony that this is a testimonial statement based on the language of the Crawford holding and opinion the government's best response and it's not a bad response here is that our client opened the door to this by saying she didn't write it which immediately was a stupid thing for my client to say but the the way you get or the way the government should have done with that is what they in fact they did which is to call the officer and say no she didn't write it i know she did write it i didn't write it i saw i witnessed her writing and if that wasn't good enough for him you call the witness you don't put in her hearsay statement to prove something that proves this so the jury can and how do you look at this and the government series oh she you could look at the statement and know that 11 year old wrote it how do you do that i've seen adults whose handwriting is as bad as any 11 year old there's no way you can look at a statement and say well this was written by an 11 year old as to the content of the statement the content of the statement is very prejudicial and it's a statement made not under oath not subject cross-examination and introduced for the purpose of proving the truth the matter of service right that's well the guy that's not the government's theory is that it was introduced only to show that she didn't write the statement could that not have been done by um deleting everything but the signature line and tape line that would have been a reason was any such motion made by the defendant we objected strenuously to his introduction we did not come up with that specific idea and that's no that's a great idea no no motion to redact we did not think of that i will and that's it that would have been a great idea actually as a what to do with that statement i'd like to reserve the rest of my company you may do so counsel that's fine uh mr la hood good morning my name is darren la hood i work as an assistant united states attorney in the district of nevada and las vegas i want to make two brief points then i'll immediately address the vouching issue the defendant's entire case at trial was premised on the visceral attack of gloria green's on truthfulness and also the officers on truthfulness essentially gloria green committed perjury when she took the stand and also at least one of the officers committed perjury on the stand second point is the overwhelming evidence in this particular trial was that the defendant was guilty of this charge the jury deliberated less than two hours we had five impartial law enforcement officers that testified consistently and contemporaneously with gloria green steve and joe maranzano three civilian witnesses we have the uncontradicted testimony of joe maranzano that less than an hour after the defendants arrested they retrieved the gun two blocks away from him the same gun that he gave to joe maranzano two days before we have the uncontradicted testimony of steve kennedy that that was his gun that it showed up at mr green's house a month before by an employee of him probably of his cliff we have gloria green's testimony that that gun and those bullets were the defendant's bullets pardon me did kennedy testify that the gun showed up at green's house um mr kennedy testified that his gun that it was his gun he recognized that gun in the courtroom he theorized that that gun arrived at that residence a month before when he came over there to see mr green and his wife along with his wife mr kennedy's wife and cliff was there acting suspicious he went and looked for the gun um at some point after that the gun was gone he theorized that that gun that he recognized in court arrived there at mr green's house the night cliff was there and that's what he testified he didn't see the gun on cliff nor at green's house he did not on that particular night he came up with that theory at trial your honor and testified to that if the evidence was so overwhelming as you shot why did you need all this vouching and why did we need why did you need all this hearsay well i'll address the vouching specifically your honor first of all the main case that the defense relies on the combs case which recently came down is completely factually different from this particular case in that particular case there was there was there was no direct uh credibility problems with any of the witnesses there and in that case if you're if you look at the record there the prosecutor in that case put on the why the defendant was on the stand on cross examination made him admit that the agent was lying but that's not all that happened the district court judge interjected on cross examination and asked the the defendant to admit the agent was lying the defendant testified the agent was lying and in cross examination commented on that the other factual distinction from combs is the evidence was not overwhelming in that case it was a very very circumstantial case the jury was out at least three days in that case very circumstantial completely different from the facts here and if you read the opinion in combs and what they talk about the prosecutor opening his own door going after um and making the defendant admit that the if they had not gone after the and done the visceral attack on gloria green and the other witnesses if they had not gone after their untruthfulness i think this would have been vouching but your honor you got to think about this they he gloria green was called a pathological liar she was accused of forgery which is a felony she was accused of lying in a court document um regarding a restraining order she was accused of having an affair on her husband with joe did you try the case yes i did your honor does that does does allegations which you consider to be outrageous does that allow a usa to vouch that his witnesses are correct and truthful and the defendants witnesses are lying your honor i think there's an appropriate response and i think there's a line that can be crossed and i don't believe it was crossed here and i think if you look at if defense counsel crosses the line does that allow vouching though i've never heard that concept well i think there's a concept of writing the scale and invited reply and i think there's a whole line of cases that go through what a prosecutor can do in inviting reply invited invited reply never included vouching i that that is there's no such case well your honor i i would argue that if you look at the line of cases that we cite in our brief i don't think the government crossed the line here this was a different factual scenario when you look at the the visceral attack on the witnesses here to say that the the gloria green committed perjury that the officer committed perjury had to be appropriately responded to by saying that you personally don't believe the defense witnesses but believe the government witnesses is that the appropriate response your honor the appropriate i believe that it didn't cross the line here i think there's an you know i didn't say the united states government believes she's telling the truth said that you did well your honor did you represent the united states government yes i did your honor so is that the same thing as saying the united states believes that its witnesses are truthful and the defense witnesses are lying well your honor i think when you look at those rare cases when vouching has been affirmed or where vouching has been uh looked at in court cases um it doesn't rise to that level your honor i mean those are cases where there's circumstantial evidence or when the truthfulness of witnesses haven't been attacked and that's completely different in this case your honor that simply is not the facts here and i would also argue your honor that the judge told the jury beforehand and during jury instructions these are just simply arguments of the witnesses you know arguments of the uh of the lawyers and that's what they should be referred to they also gave jury instructions um telling the jurors that these other acts that occurred here he's not on trial for those acts and and so the judge i believe did the appropriate thing in the jury instructions in informing the uh jurors that these were simply arguments uh by counsel and not evidence to be believed you know maybe if you didn't have all this uh vouching and all this uh uh error alleged error maybe the jury wouldn't have been out for only two hours it seems to be out of close case it's his word against her word he had a credibility the gun wasn't even found in his premises it was found somewhere else and he had a story you can believe it or not believe it that his wife is you know framing him the issue she's having a love affair with someone else or whatever it was but it's his word against her word i didn't see it as a overwhelming case well you're sure as an overwhelming case that he was from the theater and a trial theater well your honor i think i would believe you if we didn't have joe maranzano and steve kennedy test we have joe maranzano who lives two blocks away he said two days ago he brought me that gun he brought it in this particular case and gave me that gun and traded me that gun that's his testimony that was uncontradicted so for a jury to be out less than or not two hours i think is completely appropriate when his testimony is completely consistent with gloria greens with all the officers and with the statement that came in and also mr kennedy's all of those are consistent i think if it was just her versus him your honor it would be a closer call but that's not the facts here we had a plethora of witnesses that that testified consistently and contemporaneously to what miss green testified to your honor and that was and that was the evidence that was presented to this jury and why they were out such a short period of time i have another area i'd like to ask you about sir you said i if i believe if i got you correctly that there was some need to explain domestic violence to show why the police officers were there in the first place is that correct that's correct all right now once there was some mention we were answering a domestic violence report why is there the need to put in any further testimony as to the substance of the domestic violence dispute it's a good question your honor thank you this jury this jury cannot hear this case in a vacuum there's a number of different facts here the jury is going to wonder why gloria green taped these bullets under a bathroom sink why did she what's your view well my view and i think it came out from the evidence is as she testified this was the final straw she had had enough she'd been able to calm him down before but this went over the line and on that morning he asked for the bullets after the previous evening when the incident occurred and in the middle of the night he hit her in her bed she got scared when he asked where's the bullets at she took the initiative to grab those bullets where they're at because she was scared without him knowing and hide him in the bathroom area the jury would want to know why why was she doing that that has to be known why was she scared of the bullets because she didn't know where the gun was at the time she didn't want him to find that gun wherever it was at she didn't know where it was at at that time she theorized later it may be at where he hit it she in fear of his using the gun against her is that what you're suggesting i think that there that what went through her mind is those bullets belong to a gun i don't know where that gun is you know my daughter or myself could be placed in jeopardy if he's asking for that she was she testified that she didn't know where the gun was in view of a testimony of maranzano that the gun was traded for what for some toys for a pool for a pool right so she knew that she did she also know that didn't know where the pool came from that didn't come up in the trial your honor i mean where is the evidence that that she didn't know where the gun was because if she did know that the gun had been traded to maranzano then there's no purpose there's no way that she could be afraid of the bullets well if you remember her testimony on it when the police immediately got there and asked her are there any weapons she said yes i think there are weapons in there there may be a gun when they didn't find a gun they went back to her and said we never found the gun where is the gun and she said well you may want to check he may have traded it to joe maranzano so she came up with that after she thought through the process that i remember him going down there a few days ago so that's one issue that needed to be addressed in the journey to here so she has some doubt whether the gun was in the house because she told the police officers before mr green said anything that she thought the gun was at maranzano's right she she bullets at that point when she put them under the tape them under the table were totally innocuous to her well but but she said there's no gun there well she said there may be weapons in that house well what weapons what weapons well what weapons be a 22 gun in order to shoot the 22 bullets right i mean they they look they were looking for a weapon they were looking for a gun when they went in there weapons other than the rifle did she have knowledge or fear of that was it was a rifle your honor then weapons to one side weapon 22 rifle right that was the only she volunteered to the police officers when they asked we can't find the weapon that it may be at maranzano's because it had been traded for a pool you're telling me that she was really worried that the bullets were going to be used to shoot her with a weapon that was at maranzano's well your honor i think if you if you look at her testimony in the cross-examination um it didn't play out exactly like that well because there may be some belief that she wasn't telling exactly precisely well getting back to your original point your honor i think the jury needs to find out why those bullets were there and also regarding the need for other testimony regarding this incident and how it was interstrictly intertwined she apparently had this gun and bullets in her house a month before the jury's going to wonder why didn't you call police on your husband that bullet and those guns were in your house a month before when they were brought in there why didn't you call police till this incident it's not like she called police on the evening the 29th she called on the 30th after why should she call the police on her husband why did she know why should she call you're saying that she knew that it was a a felony to have ammunition if he was a prior felon well and the defense went asked her why you didn't call police and so i think the jury needs to hear why she called police on that day she called because of the domestic violence incident and what was the reason why it was necessary to bring in the textual testimony of the child's statement well your honor that gets to when he took the stand 11 different times he said that statement was not written by my daughter i swear on my mother's grave was his quote that that officer lied did you have any comparison writings that were authenticated by the child that was comparability of the writing no your honor but did you have an expert witness who testified that in his opinion after being duly qualified the writing on this piece of paper was that of the daughter no your honor thank you i would further add on that the the defendant went through a lengthy analysis of of why this was not his daughter's statement and he really opened the that handwritten statement of the daughter would have never came in it would have never been brought in if he hadn't taken the stand and said that officer's lying that's not my daughter's handwriting prove the authenticity of the statement being made by the daughter by showing the signature line and the date without the text well your honor if that would have been uh if that would have been recommended i think that would have been appropriate your honor at that time you know sometimes we we use hindsight which isn't really fair and i think in in hindsight i think if that recommendation had been put forth i think that would have been appropriate your honor yeah but without it being recommended what you put in was pure hearsay you put in information which showed that the man's a wife and child beater and uh you know you could say that they convicted him for being a white beater and uh and because uh and uh let the uh possession of a by a felon go by the board well i would also add when that was admitted the judge gave a limited instruction on that saying this is strictly limited for the purpose not of the truth of matter asserted but strictly to show the daughter wrote this and admonished that jury specifically on that point judge told the jury to forget about the white elephant in the jury room i understand that's correct your that was the statement so it wasn't only that it went to prove the officer didn't lie and that this was not falsified uh and the officer committed perjury that in fact this was you know handwritten by the daughter your honor i would also add your honor in looking at the overwhelming amount of evidence that was present in this case i would also add when the defendant took the stand the government intended to bring up his prior five felony convictions and the judge in an abundance of caution restricted us we couldn't even bring in the fact that a month early he'd been convicted of the same exact charge being a felon in possession of a firearm which we argued adamantly that should be brought in but the judge in abundance of caution said that's too prejudicial you're not the appellant the defendant is the appellant i'm just saying that goes to the point that the evidence was overwhelming in this case and i believe that's why the judge didn't do it he didn't allow he handcuffed the government because the evidence was overwhelming in this let the jury call the shots instead of all this this error and this vouching you know you didn't have to cross the rubric on here with any hearsay or vouching if it was so overwhelming well your honor again when someone's called a pathological liar and when someone is accused of forgery which is a felony and accused of perjury in another state of court appearance accused of cheating on her husband accused of framing the defendant planting the gun and bullets on the defendant i mean these were all attacks by the defendant all of these things they needed to be responded to appropriately and i agree with you judge if if none of this had been brought up regarding the untruthfulness and the visceral attack on her it would have been vouching but it had to be appropriately responded to and when you look at the combs case which is your honor if there are no other questions at this time um no questions counsel thank you you have some reserved time thanks for the government would come up and say in combs that the prosecutor was still out of line because he tried to get the defendant to admit that a cop was lying if you look at page 349 of our er government cross-examination of garen green says questioned by the prosecutor so detective stanborn had that in this report he'd be lying defense counsel objection that's an improper question the court sustains the objection so the only reason why the government didn't get away of that tactic in this case is because the court sustained that objection but hardly on the high ground in this case and in combs specifically addresses this invited response argument the government keeps making they keep talking about combs but they didn't look at the case because the case there says that there is no invited error exception you cannot vouch for witnesses period invited error may have some relevance when we evaluate these statements for whether they're prejudicial or not but certainly defense counsel can attack the credibility of witnesses and that gets back to the how strong was this evidence we this is a unique case where under even the government's theory of conviction mr green voluntarily relinquished the weapon days before his arrest this is not a case even under their theory if you see all their facts are true he did not possess this weapon on the day of his arrest under their theory he gave it away and he gave it away to a who is having an affair allegedly with gloria green but how is that relevant the indictment says on or about november 28th it doesn't say at the time of the arrest you can prove that if he had it three days before he was a felon then and he had possession of the gun then per a permissible theory of prosecution but it also is one that points to the weakness of the evidence because it's unusual theory of prosecution did you object on that particular issue no you're right there's nothing wrong with that with them charging it that way my point is that the fact that he voluntarily relinquished it makes the case unusual and also makes it more difficult to prove and we're talking about gloria green we're talking about a woman who we learned on cross-examination once my client was taken into custody on this charge she filed a tpo saying with the court saying not that i'm afraid of him but that i want all his assets and we we did put a strong case up there that she was a biased witness and that she may have been having affair with this joe maranzano guy and that they may have in fact framed mr green that was our theory of defense in order to defeat that theory of defense the prosecution vouched for their for their witnesses engaged in unconstitutional cross-examination and committed a host of other errors and misconduct that prevented us from receiving a fair trial this was indeed a closed case there's clear error the conviction should be reversed thank you thank you counsel the case just argued will be submitted for decision and we will now hear argument in the last case for this docket
judges: O'scannlain, Cowen, Bea